**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CARRAH LEBOON ODELL,　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Appellant,　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:　　C.A. No. K22A-09-001 JJC
　　　　　　　　　　　　　　　　　:
UNEMPLOYMENT INSURANCE　　　:
APPEAL BOARD,　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Appellee.　　　　　　:

Submitted:　April 11, 2023
Decided:　　June 30, 2023

## <u>ORDER</u>

On this 30th day of June 2023, having considered Appellant Carrah Leboon Odell's appeal of the decision of the Unemployment Insurance Appeal Board (the "Board" or the "UIAB"), and the responses filed by both the Division of Unemployment Insurance (the "Division") and the Board, it appears that:

1.　Ms. Odell appeals a UIAB decision requiring her to repay unemployment benefits paid to her by mistake. Because her appeal challenges an administrative agency's decision, the Court must confine its review to those facts contained in the UIAB's record.

2.　The Court begins by summarizing the case's complicated procedural history where the agency examined the relationship between traditional state unemployment benefits and federal supplemental benefits through a bifurcated administrative process. As explained below, the procedural history largely drives the Court's decision on appeal.

3. At the outset, a Division claims deputy found that Ms. Odell fraudulently submitted evidence to support her unemployment claim. For that reason, the deputy disqualified her from receiving traditional State unemployment benefits.[1] She then appealed the deputy's decision to an appeals referee.[2] The appeals referee reversed the finding of fraud. The referee nevertheless affirmed the deputy's determination that Ms. Odell had received overpayments because she mistakenly submitted net wages rather than gross wages in support of her claim.[3] Ms. Odell declined to appeal that decision so it became final.[4] After a final decision that she had received *an* overpayment, the Division proceeded with the second phase of the overpayment adjudicatory process – the proceeding necessary to determine *the amount* of the overpayment subject to recoupment.[5]

4. In this second stage, the Division separated her benefits into two classes and in turn conducted two proceedings to determine how much she needed to repay. In one of the proceedings, the claims deputy found that she was overpaid $2,039 in traditional state unemployment benefits.[6] Given that finding, the claims deputy issued a second decision finding that Ms. Odell wrongfully received $5,100 of supplemental Federal Pandemic Unemployment Compensation ("FPUC").[7]

---

[1] Claims Deputy's Disqualification Decision, R. at 68 [hereinafter the Court refers to the UIAB's certified record as "R. at . . ."].

[2] R. at 70, 125.

[3] R. at 72, 127.

[4] *See* 19 *Del. C.* § 3318(b) (providing that if a claimant receives adequate notice of the decision and fails to appeal it within ten days, the determination becomes final).

[5] *See* 19 *Del. C.* § 3325 (explaining the two aspects of the administrative proceedings); *see also Bradfield v. Unemployment Ins. Appeal Bd.*, 53 A.2d 301, 2012 WL 3776670, at *2 (Del. Aug. 31, 2012) (TABLE) (explaining that 19 *Del. C.* § 3325 requires the Department, through a bifurcated process, (1) to first find that the claimant was not entitled to benefits before (2) conducting a second proceeding to address the amount of the overpayment subject to recoupment).

[6] R. at 118.

[7] *Id.*

5. The Federal government made FPUC available to claimants through the Corona Virus Aid, Relief, and Economic Security Act (the "CARES Act").[8] The CARES Act, its supporting regulations, and U.S. Department of Labor ("DOL") guidelines established the requirements for the benefits and set their amounts. By the time of Ms. Odell's claim, the CARES Act provided her $300 in weekly supplemental benefits because she was receiving traditional unemployment compensation benefits.[9] In other words, the payment of FPUC benefits depended upon her receipt of traditional unemployment compensation.[10] DOL guidelines require a state's administering agency (here the Division) to recover FPUC payments if an individual receives them in error.[11]

6. After the claims deputy issued the two decisions, Ms. Odell appealed them to an appeals referee, who, in turn, affirmed them.[12] She then appealed the appeals referee's decisions to the UIAB. At that point, the Board consolidated the matters, reviewed the record from below, and affirmed the appeals referee's decisions without considering further evidence or argument.[13] Ms. Odell now appeals the Board's order that affirmed her obligation to repay $7,139.

7. Ms. Odell's appeal of a UIAB decision requires the Court to review the record for substantial evidence to support the Board's decision and to determine if the decision was free of legal error.[14] Substantial evidence means "such relevant

---

[8] Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C.A §§ 9001–9141 (2020).
[9] 15 U.S.C.A § 9023(b)(3)(A)(ii).
[10] U.S. Dep't of Labor, Emp. and Training Admin., Advisory Letter, No. 15–20, Attachment I, § D(2) (Apr. 4, 2020) [hereinafter "UIPL No. 15–20 . . . "].
[11] *See id*. § F(5) (providing that "[i]f the overpayment amount is not subject to waiver, the state agency must recover the amount of FPUC to which an individual was not entitled in accordance with the same procedures as apply to recovery of overpayments of regular UC paid by the state.").
[12] R. at 61; R. at 114.
[13] *Leboon (Odell) v. Delaware Department of Labor*, UIAB Appeal Docket Nos. 67089948; 67069139, at 1 (May 25, 2022).
[14] *Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 309 (Del. 1975); *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781–82 (Del. 2011).

evidence as a reasonable mind might accept as adequate to support a conclusion."[15] When reviewing the record for sufficiency of evidence, the Court considers the record in the light most favorable to the prevailing party below.[16] Furthermore, the Court cannot make its own factual findings, assess witness credibility, or weigh the evidence when undertaking this review.[17] Finally, the Court's review for legal error is *de novo*.[18]

8.    Ms. Odell raises several arguments.  Among them are challenges to the sufficiency of the evidence, allegations that the Division committed discovery violations, and the request that the Court consider additional evidence on appeal that was not part of the record below.

9.    With regard to the sufficiency of the evidence, Ms. Odell made certain material concessions during the administrative proceedings.    First, she conceded that she mistakenly reported her net wages rather than her gross wages.[19]  She further conceded that the mistake, in turn, made her ineligible for traditional benefits for seventeen weeks.   Furthermore, she did not contest that she received the $5,100 in FPUC benefits in error.[20]    These concessions, coupled with other evidence, provided more than substantial evidence to support the Board's decision.   That evidence included  the following: (1) Ms. Odell's testimony acknowledging that she

---

[15] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).
[16] *Pochvatilla v. U.S. Postal Serv.*, 1997 WL 524062, at *2 (Del. Super. June 9, 1997).
[17] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).
[18] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).
[19] *See, e.g.*, R. at 48(containing Ms. Odell's acknowledgment, through testimony, that her wages disqualified her from receiving both traditional state benefits and FPUC but requesting a waiver because of financial hardship);  *see also* R. at 142 (where Ms. Odell acknowledged in writing that "I made the mistake of reporting net wages instead of gross wages . . ..").
[20] *See* Appellant's Opening Br. at 9, 11–12 (arguing that she did not receive a copy of a summary page illustrating her "full wages", but declining to challenge the accuracy of the overpayment calculation); Reply Br. at 5, 9–10 (arguing that the software system is flawed because it did not capture her two different employers, but again making no claim that the overpayment calculation was inaccurate).

had unintentionally underreported her income;[21] (2) testimony from a Division representative familiar with the reporting system;[22] and (3) her payment history that demonstrated an overpayment in the amount of $2,039 for traditional unemployment benefits and $5,100 in FPUC supplemental benefits for the weeks of April 10, 2021 through July 31, 2021.[23]

10.     Regarding the scope of the record, Ms. Odell seeks to supplement the record on appeal with emails exchanged between her and the Division's and Board's staff.   In an administrative appeal, the Court is unable to consider new evidence for the first time on appeal.[24]

11.     As to discovery before the agency, Ms. Odell contends that the Division had an obligation to provide her computer information that the Division did not offer against her during her appeal and to organize it in a certain way.     The parties have no broad discovery obligations or rights in an administrative proceeding unless the agency's rules provide for them – which in this case, none do.   Here, the proceedings provided adequate due process because Ms. Odell had notice and a full and fair opportunity to contest the evidence presented against her.   Neither the Division nor the UIAB had an obligation to create and package evidence in a form that she now requests.

12.     Ms. Odell also asserts several legal errors by the UIAB.   First, she contends that the Board erred when it declined to hold a separate evidentiary hearing before deciding her appeal of the referee's decisions.[25]  She is incorrect because 19 *Del. C.* §3320(a) permitted the Board to rely on evidence submitted to the claims

---

[21] R. at 48.
[22] R. at 39.
[23] R. at 128.
[24] *See Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del. 1976) (explaining that the Superior Court confines its review on appeal to the record before the agency).
[25] Appellant's Opening Br. at 13–14; Appellant's Reply Br. at 4, 13–14.

deputy and appeals referee without considering further evidence or argument.[26] When the General Assembly created the UIAB's internal appeals structure, it created one that permitted the UIAB to rely on only the record created below.[27]

13.    Ms. Odell also asserts legal error when challenging the UIAB's interpretation of a statute that requires the Division to recoup overpaid benefits.[28] She contends that the Board had the discretion to waive recovery in her case because the appeals referee had found she committed no fraud.  In this regard, she contends that the Division made the mistake when it paid her the benefits which, in turn, relieved the Division of the obligation to recover the overpayments.  The statute at issue, however, imposes a mandatory obligation on the Division to recover errant benefits as follows:

> [i]f it is finally determined that an individual received benefits under this chapter for which the individual was not entitled, *the individual shall repay*, in cash, the amount of the overpayment . . . . The individual is liable regardless of whether the overpayment was received through fraud *or mistake* . . . .[29]

14.    Notwithstanding the above-quoted provision, Ms. Odell contends that the Board erred because the statute should be interpreted as applying only to unilateral mistakes committed by claimants and it was *the Division* that mistakenly overpaid her.[30]  Here, the Court need not determine the nature of the mistake or who made it because the term "mistake" is unambiguous.[31]  The common ordinary definition of "mistake" is "a wrong action or statement proceeding from faulty

---

[26] 19 *Del. C*. § 3320(a); *Bossert v. Div. of Unemployment Ins.,* 2022 WL 17249305, at *3 (Del. Super. Nov. 22, 2022).

[27] *Bossert*, 2022 WL 17249305, at *3.

[28] Appellant's Opening Br. at 12–13; Appellant's Reply Br. 5–9.

[29] 19 *Del. C*. § 3325(a) (emphasis added).

[30] Appellant's Opening Br. at 12; Appellant's Reply Br. at 5.

[31] *See Taylor v. Diamond State Port Corp*., 14 A.3d 536, 538 (Del. 2011) (explaining that a tenet of statutory construction requires courts to apply the plain meaning of a statutory term absent ambiguity).

6

judgment, inadequate knowledge, or inattention."[32]   The term requires no ill-intended conduct – only error.   Moreover, nothing in the statute qualifies the Division's obligation to recoup wrongfully paid benefits only upon a claimant's error. [33]   To the contrary, the Board did not err when it applied 19 *Del. C.* § 3325(a) to Ms. Odell's overpayment regardless of who or what caused the mistake.   As a final note, even if the statute were as Ms. Odell advocates, she testified before the appeals referee that "I made the mistake of reporting net wages instead of gross wages."[34]  That admission alone provided substantial evidence to support a Board finding that it was *her* mistake that caused the overpayments.

15.    As a final matter, Ms. Odell incorrectly contends that the Board's refusal to waive recovery of her FPUC overpayment was arbitrary and capricious.[35] She argues that the UIAB should have waived the recovery because federal guidelines *permit* a State to apply a hardship waiver.[36]

16.    Here, Ms. Odell received supplemental FPUC benefits only because she received traditional state unemployment benefits.[37]  Accordingly, wrongfully paid traditional benefits meant there were wrongfully paid FPUC payments.[38]  Ms. Odell cites no federal guidelines, regulations, or statutory provisions that required the Division (as Delaware's administering agency) to grant her a hardship waiver.

---

[32] *Mistake*, *Webster's New Collegiate Dictionary* (3d ed. 1978).

[33] *See Russell Fowler v. GT Wilmington USA*, 2023 WL 2669832, at *2 (Del. Super. Mar. 27, 2023) (explaining that under 19 *Del. C.* § 3325 any person who receives benefits they are not legally entitled to shall be liable to repay the overpayment benefits regardless of fault, even if it was the Division that made the mistake).

[34] R. at 142.

[35] Appellant's Opening Br. at 9–10; Appellant's Reply Br. at 6, 10–13.

[36] UIPL No. 15–20, Attachment I § F(4); U.S. Dep't of Labor, Emp. and Training Admin., Advisory Letter, No. 20–21, § 4(a) (Feb. 7, 2022) [hereinafter "UIPL No. 20-21 . . ."].

[37] 15 U.S.C.A § 9023(b)(3)(A)(ii).

[38] *See* UIPL No. 15–20, Attachment I, § F(2) (opining that "[i]f an individual is deemed ineligible for regular compensation in a week and the denial creates an overpayment for the entire weekly benefit amount, the FPUC payment for the week will also be denied.").

Granted, the various states' administering agencies have the discretion to create procedures to waive recovery of wrongfully paid FPUC because of hardship if they can do so consistently with state law.[39] Although the U.S. Department of Labor has encouraged states to adopt waivers for CARES Act unemployment compensation programs in an advisory Unemployment Insurance Program Letter No. 15-20, the letter nevertheless confirms that there is no federal requirement to grant such waivers.[40]

17. As the Division correctly highlights in its brief, the State has declined to adopt waiver procedures for wrongfully paid FPUC benefits. In fact, the Division and the Board have no discretion to do so from a State-law perspective given the mandatory recoupment provision in Section 3325(a) that *requires* the recovery of erroneously paid benefits.[41] In summary, Ms. Odell's FPUC benefits were directly linked to erroneously paid traditional benefits. The Board committed no error of law when it declined to waive recovery of those overpayments and ordered Ms. Odell to repay them.

**WHEREFORE**, the decision of the Unemployment Appeal Board is **AFFIRMED** for the reasons explained above.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & ServeXpress*
*U.S. Mail to Appellant Carrah Leboon Odell*

---

[39] *See* UIPL No. 20–21 § 4(c) (providing "[u]nder the CARES Act … states must require an individual to repay the amount to which they were not entitled … except that the state *may* waive recovery under specific conditions.") (emphasis added)).

[40] UIPL No. 15–20, Attachment I, § F(4).

[41] *Russell*, 2023 WL 2669832, at *2.

8